**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| RICHARD CHUNG TACK HONG, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner, Social Security )<br>Administration, )<br>)<br>Defendant. )<br>_____ ) | No. EDCV 09-01163 CW<br><br>DECISION AND ORDER |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

### I. BACKGROUND

Plaintiff Richard Chung Tack Hong was born on October 20, 1954, and was fifty-three years old at the time of his administrative hearing. [Administrative Record ("AR") 20, 80.] He has a college education and past relevant work as an assistant minister, part-time

1

teacher, and post office carrier and supervisor. [AR 20-21, 86-90, 101, 104, 115.] Plaintiff alleges disability on the basis of a bulging disc in the neck and injury to the neck and spine. [AR 100.]

## II.   PROCEEDINGS IN THIS COURT

Plaintiff's complaint was filed on June 18, 2009.  On November 18, 2009, defendant filed an Answer and plaintiff's Administrative Record ("AR").  On January 11, 2010, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.   PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for a period of disability and disability insurance benefits ("DIB") on August 23, 2006, alleging disability since February 1, 2005.  [JS 1.]  An administrative hearing was held on August 1, 2008, before Administrative Law Judge ("ALJ") Thomas P. Tielens.  [AR 18.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff and a vocational expert.  [Id.] The ALJ denied benefits in a decision issued on December 17, 2008.  [AR 14-15.]  When the Appeals Council denied review on April 21, 2009, the ALJ's decision became the Commissioner's final decision.  [AR 1.]

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject

the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

>Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler,

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 1, 2005 (step one); that plaintiff had "severe" impairments, namely degenerative disc disease of the cervical spine (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 11.] Plaintiff was found to have an RFC enabling him to occasionally lift up to twenty pounds, frequently lift and/or carry up to ten pounds, and sit, stand and/or walk for six hours in an eight hour day. [AR 12.] Plaintiff was found to be limited to frequent (as opposed to constant) gross and fine manipulation and occasional climbing of stairs and ramps but precluded from climbing ropes, ladders and scaffolds. [Id.] The vocational expert testified that this RFC would enable plaintiff to return to his past relevant work as a supervisor for the United States Post Office and as a minister (step four). [AR 14.] Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [Id]

### C. ISSUES IN DISPUTE

The parties' Joint Stipulation sets out the following disputed issues:

1. Whether the ALJ properly considered all of the relevant medical evidence of record, including the opinions of the treating physician Dr. Jung, M.D.

---

765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

    2.    Whether the ALJ properly considered Plaintiff's subjective complaints and properly assessed Plaintiff's credibility. [JS 3.]

**D.  ISSUE ONE: Dr. Jung's Opinions**

Plaintiff began seeing Dr. James Jung in April 2003, complaining of neck and back pain. [AR 179.] An MRI report from July 2002 showed a two millimeter posterior subluxation of the C5 vertebral body relative to C6 and osteophyte formation of the anterior aspect of the C5 vertebral body. [AR 178.] A CT scan from April 2003, however, only revealed a one to two millimeter posterior disc protrusion at the C3-C4 level.  [AR 185.] Plaintiff underwent NCG/EMG in June 2003, which indicated left middle cervical radiculopathy. [AR 206.]  A CT scan from December 2006 found minimal spondyloarthic and degenerative disc disease changes at the C6-C7, in addition to mild left C6-C7 neural foramina stenosis, with no other abnormalities noted. [AR 173.]  Dr. Jung has consistently found tenderness to palpitation to the cervical spine during plaintiff's appointments. [AR 126-141, 166-299.]  In January 2005, Dr. Jung recorded the plaintiff as having motor weakness in his hands. [AR 140.] Dr. Jung prescribed Vicodin to the plaintiff, who testified that he takes around three each day.  [AR 27, 103, 126-141, 166-299.] Plaintiff testified that the only other treatment he has received were two shots in 2004. [AR 24.]

Dr. Jung's medical source statements from 2004 to 2007 almost consistently indicate that the only task plaintiff is able to perform each day is one hour of driving.[2] [AR 171-172, 249, 254, 255, 259,

---

[2] Each form indicates that plaintiff cannot sit, stand, walk, climb, kneel, bend or stoop, twist, pull or push, grasp, perform fine manipulation (including using a keyboard), or reach above his shoulder

1  261, 265, 268, 270-281, 287, 296, 299.] However, two statements from
2  2007 (dated March 23 and September 20) indicate that plaintiff can
3  lift up to ten pounds for one-third of the day and can spend up to
4  one-third of the workday bending. [AR 284, 290.]  No narrative
5  explanation or change in the corresponding appointment notes accounts
6  for this difference.   [AR 126-141, 166-299.]

   Plaintiff was also examined by Dr. Jeff Altman, M.D. on October 13, 2006.  His consultative report indicates that plaintiff had no tenderness to his cervical spine. [AR 155.] He found a grip strength of fifty pounds and all of plaintiff's body parts to have a range of motion within normal limits. [AR 155-157.]  Taking plaintiff's complaints of neck pain into consideration, Dr. Altman found that plaintiff could push, pull, lift, and carry twenty pounds occasionally and five pounds frequently. [AR 157.]  He found that plaintiff could walk and stand for six hours in an eight-hour workday, with no restrictions on sitting, and that gross and fine manipulation could be done on a frequent basis. [Id.]  The Physical Residual Functional Capacity Assessment performed by the State agency physician indicated virtually identical abilities, differing only in determining that plaintiff could occasionally carry up to ten pounds and should never use ladders. [AR 161-165.]

   In the administrative decision, the ALJ noted the evaluations of both Dr. Jung and Dr. Altman. [AR 13.] He determined that Dr. Jung's opinion was not entitled to controlling weight because it was contradictory, based on minimal progress notes that did not support Dr. Jung's assessment of plaintiff's limited capacities, and

---

with any weight for any length of time during the day. [AR 171-172, 249, 254, 255, 259, 261, 265, 268, 270-281, 287, 296, 299.]

inconsistent with the minimal medical treatment provided. [Id.] The ALJ also found that Dr. Jung's 2004 medical source statements were in fact contradicted by plaintiff working during that year. [Id.] He additionally noted that the state agency consulting physician agreed that the medical evidence did not substantiate Dr. Jung's claims of functional loss. [Id.] Plaintiff contends that the ALJ's decision failed to give proper weight to Dr. Jung's opinions and did not support his decision with "significant and legitimate reasons." [JS 5-6.]

It is well-settled that the opinion of a treating physician is entitled to deference in the ALJ's disability determination, but the opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Moreover, an ALJ may properly consider inconsistencies within the physician's findings in evaluating their credibility. See Johnson v. Shalala, 60 F.3d 1428, 1432-22 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes, 881 F.2d at 751; see also Khounesavatdy v. Astrue, 549 F. Supp. 2d 1218, 1228 (E.D. Cal. 2008)("[I]t is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion."); cf. Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007) ("the consistency of [the] treating physicians' reports merits additional weight).

In this case, the ALJ noted that Dr. Jung's notes do not indicate

how plaintiff could have such extreme functional limitations in light of what the ALJ characterized as "minimally abnormal clinical signs." [AR 13.] Dr. Jung's notes indicate prescriptions for no treatment besides Vicodin. [AR 126-141, 166-299.] Additionally, Dr. Jung's source statements are conclusory, indicating that plaintiff had no functioning capabilities in any category except the ability to drive one hour each day, without explanation or supporting appointment notes. [AR 171-172, 249, 254, 255, 259, 261, 265, 268, 270-281, 287, 296, 299.] Dr. Jung's source statements also provide no narrative explanation for his determination that in March and September of 2007, plaintiff could lift up to ten pounds for 1/3 of the day and bend for 1/3 of the day, but that plaintiff did not have these capabilities at any other time in the four years (2004-2007) of reports in the record, despite virtually identical appointment notes throughout. [AR 13, 126-141, 166-299.] Additionally, the supportability of reports from a physician requires findings that are "consistent with the record as a whole." Orn v. Astrue, 495 F.3d at 634 (quoting 20 C.F.R. § 404.1527(d)(4)) (internal quotation marks omitted). As the ALJ noted, Dr. Jung's opinions are notably contradicted by the plaintiff himself, who continued working as a minister until 2005 and reported, in February of 2007, that he walked two miles everyday.[3] [AR 13, 21, 101.]

In order to reject the contradicted opinion of a treating physician, the ALJ must provide "specific and legitimate reasons" for doing so. Lester, 81 F.3d at 830-31. The ALJ in this case met that

---

[3] While not noted by the ALJ in his decision, Dr. Jung's notes also seem to indicate that plaintiff needed "pain medicine for [a] long trip" in January of 2007 and had gone on a "missionary" trip to a "tropical area" in March of 2006. [AR 166, 129.]

9

standard.  He assessed Dr. Jung's conclusions in light of the limited nature of plaintiff's treatment, the lack of objective medical findings, and the fact that Dr. Jung's opinions were contradicted by the plaintiff's own behavior. [AR 13.] Where the record contains conflicting evidence that is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).   Accordingly, plaintiff's first claim is without merit.

**E.   ISSUE TWO: Plaintiff's Subjective Complaints**

During the administrative hearing, plaintiff testified that he had back and neck pain, that the neck pain extended down into his hands, and that his pain is relieved somewhat by lying down, which he said he spent twelve hours each night and two to three hours each day doing. [AR 22-23, 26, 28-29.]  He also testified to numbness and a loss of strength in his hands.  [AR 30.] Plaintiff said he took Motrin and about three Vicodin each day, which made him "fall[] asleep." [AR 27.]  The ALJ noted all of this in his decision, but found plaintiff's testimony "not credible." [AR 13-14.]  Plaintiff asserts that this determination constitutes reversible error because the ALJ "failed to cite any clear and convincing reasons" to reject plaintiff's subjective complaints. [JS 11.]

The ALJ in this case determined that while there was "a medical disorder that account[ed] for the pain in the cervical spine with symptoms radiating to the upper extremities and fingers," there were "significant inconsistencies in the record" that made plaintiff's "allegations less than credible." [AR 13.] He noted that plaintiff's subjective complaints were "not consistent with the minimal clinical findings and conservative treatment received for many years." [Id.]

The ALJ also noted that plaintiff's subjective complaints were not consistent with Dr. Jung's notes, which "refer[] to motor weakness on only one occasion." [Id.] The ALJ found that plaintiff's testimony was also inconsistent with his own behavior, as he reported walking two miles each day in his disability report from February, 2007. [Id.] Plaintiff also reported doing household chores for twenty minutes at a time, shopping, driving, using the internet, and mowing the lawn on occasion. [AR 14] Finally, the ALJ did not consider plaintiff's subjective complaint of back pain because "there [we]re no abnormal clinical or laboratory findings to establish any disorder that could cause back pain." [AR 13.] The ALJ determined that plaintiff's testimony, when viewed in light of the evidence as a whole, was not credible in regards to the "intensity, persistence and functionally limiting effects of the subjective complaints." [AR 14.]

Questions of credibility and resolution of conflicts in the testimony are functions solely for the ALJ. Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (citing Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)). To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1038, 1036 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

Lingenfelter, 504 F.3d at 1036 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)); see also Parra, 481 F.3d at 750; Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). An ALJ must "specifically identify" the testimony found not credible, the ALJ must "explain what evidence undermines the testimony," and the evidence on which the ALJ relies must be "substantial." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007); Tonapetyan, 242 F.3d at 1148 ("The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements."); Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ's evaluation of plaintiff's subjective medical complaints satisfies this standard. The ALJ noted a lack of supporting medical evidence for Plaintiff's allegation of disability, which may not be the sole basis for discrediting pain testimony, but "is a factor the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ also reasonably took into account the inconsistencies between plaintiff's testimony and his conduct. See Thomas v. Barnhart, 278 F.3d at 959 (9th Cir. 2002) (citing Light v. Social Security Admin., 119 F.3d at 792 (9th Cir. 1997)). Finally, the ALJ properly accounted for plaintiff's failure to seek medical treatment consistent with his allegation of disability. See Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991) (stating that the "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is relevant in assessing the credibility of subjective testimony"). Under these circumstances, the credibility finding is supported by substantial evidence, and Issue Two is without merit.

**VI.  ORDERS**

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.
2. This action is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: May 27, 2010

_____
CARLA M. WOEHRLE
United States Magistrate Judge